UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Freddy C., | File No. 26-CV-1433 (JMB/EMB) |
| Petitioner, | |
| v. | |
| Pamela Bondi *in her official capacity as Attorney General*; Kristi Noem *in her official capacity as Secretary of the Department of Homeland Security*; Todd Lyons *in his official capacity as Acting Director of United States Immigration and Customs Enforcement*; David Easterwood *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; Mary de Anda Ybarra *in her official capacity as Director, El Paso Field Office, U.S. Immigration and Customs Enforcement*; Oscar Ugarte *in his official capacity as Sheriff of El Paso County*; and Warden *of the Ero El Paso East Montana Detention Facility, El Paso, Texas*; | **ORDER** |
| Respondents. | |

Claire B. Deason and Lehoan T. Pham, Littler Mendelson, P.A., Minneapolis, MN, for Freddy C.

David R. Hackworthy and David W. Fuller, United States Attorney's Office, Minneapolis, MN, for Respondents Pamela Bondi, Kristi Noem, Todd Lyons, David Easterwood, Mary de Anda Ybarra, and Warden.

1

This matter is before the Court on Petitioner Freddy C.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241.  (Doc. No. 1 [hereinafter, "Pet."].) Respondents Pamela Bondi, Kristi Noem, Todd Lyons, David Easterwood, Mary de Anda Ybarra, Oscar Ugarte, and Warden (together, Respondents) are named in the Petition.  For the reasons explained below, the Court grants the Petition in part.

## FINDINGS OF FACT[2]

1. Freddy C. is a citizen of Venezuela who has lived in the United States since April 2023.  (Pet. ¶¶ 2, 15.)

2. When Freddy C. first entered the United States, he was arrested by a DHS border patrol agent.  (*Id.* ¶ 15.)  He told DHS that he was fleeing Venezuela out of a legitimate fear for his life and safety, and that he was seeking asylum in the United States.  (*Id.*)  DHS released Freddy C. on his own recognizance, subject to conditions of release, including reporting to the detention center at Fort Snelling.  (*Id.*)

3. In November 2023, Freddy C. applied for asylum.  (*Id.* ¶ 16.)

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

[2] Because Respondents did not contest any of the factual allegations in the Petition, these allegations are deemed admitted.  *See, e.g.*, *Bland v. California Dep't of Corr.*, 20 F.3d 1469, 1474 (9th Cir. 1994) ("When the State's return fails to dispute the factual allegations contained in the petition and traverse, it essentially admits those allegations."), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000).

4. DHS commenced removal proceedings against Freddy C., which were administratively closed in December 2024 due to the pending asylum application. (*Id.* ¶ 23.)

5. Aside from three parking violations, Freddy C. has no documented criminal history in the United States. (*Id.* ¶ 27.)

6. On January 28, 2026, Immigration and Customs Enforcement (ICE) detained Freddy C. in Minnesota. (*Id.* ¶ 25.) There was no warrant for this arrest. (*Id.*)

7. Within hours of Freddy C.'s arrest, Respondents transferred him to El Paso, Texas. (*Id.* ¶ 5.)

8. Freddy C. filed his Petition on February 13, 2026. (Pet.) He asks the Court to immediately release him from custody or, in the alternative, to hold a prompt bond hearing to determine whether he should remain in custody. (*Id.* at 32–33.)

9. On February 13, 2026, the Court ordered Respondents to respond to the Petition by February 16, 2026, at 11:00 a.m. CT "certifying the true cause and proper duration of Petitioner's confinement and showing cause as to why the writ should not be granted in this case," including providing any supporting documentation that may be needed to establish the lawfulness of Freddy C.'s arrest and addressing whether "the absence of a warrant preceding Petitioner's arrest necessitates Petitioner's immediate release." (Doc. No. 3.)

## DISCUSSION

Respondents generally oppose the Petition, explaining that it is "not materially different from" *Santos M.C. v. Olson*, No. 25-CV-4264 (PJS/DJF), 2025 WL 3281787 (D.

Minn. Nov. 25, 2025) and "incorporate those arguments raised by Federal Respondents in that case here. (Doc. No. 6.) In this way, Respondents reiterate their argument that the detention of petitioners similarly situated to Freddy C. is mandatory pursuant to 8 U.S.C. § 1225(b). As this Court has previously concluded, however, Respondents' interpretation lacks merit. Furthermore, Respondents do not address their failure to comply with a statutory requirement that they obtain a warrant prior to the arrest of Freddy C. (*See* Doc. No. 3.) For these two reasons, the Court grants the Petition in part and orders immediate release.

### A.     Constitutional Guarantee of Habeas Review

As a threshold matter, the Court notes that a writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)); *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 702 (D. Minn. 2025). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of

evidence. *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2466670, at *5 (D. Minn. Aug. 27, 2025) (citing *Aditya W.H.*, 782 F. Supp. 3d at 703).

### B.    Interpretation of Section 1225

Here, as in other cases, Respondents rely on an incorrect interpretation of sections 1225 and 1226 to justify detention without a bond hearing. Courts have overwhelmingly rejected Respondents' interpretation that section 1225(b)(2) requires the mandatory detention of all noncitizens living in the country who are "inadmissible" because they entered the United States without inspection. *See, e.g.*, *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025) (noting that this interpretation had been rejected in 350 cases "decided by over 160 different judges sitting in about fifty different courts spread across the United States" and collecting cases in an Appendix A); *Jose Andres R.E. v. Bondi*, No. 25-CV-3946 (NEB/DLM), 2025 WL 3146312, at *1 n.2 (D. Minn. Nov. 4, 2025) (collecting cases); *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *5–6 (D. Minn. Oct. 1, 2025) (collecting cases). This Court also finds Respondents' interpretation unpersuasive.

When interpreting a statute, "every clause and word of a statute should have meaning." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (internal quotation marks omitted) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152 (1883)). Noncitizens who have been residing in the United States but who entered without inspection have not, historically, been considered to still be "arriving" under section 1225(b). This is because the statute itself states that, in order to apply, several conditions must be met; specifically, an immigration officer must determine that the

5

noncitizen "is an applicant for admission . . . seeking admission . . . [and] not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Determining the plain meaning of the statute requires consideration of the tense of the verb "is" and the present participle "seeking." Here, section 1225(b)(2) applies to persons who presently are applicants for admission and who presently are seeking admission at the time of their detention. To be seeking admission means to be seeking entry, which "by its own force implies a coming from outside." *United States ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929). In this case, Freddy C. has been residing in the United States and is, therefore, not currently "seeking admission" into the United States.

In addition, Respondents' interpretation of 1225(b)(2) renders superfluous other immigration laws. Specifically, interpreting section 1225(b)(2) as applying to noncitizens who have already entered the country and are not currently seeking admission into the country, as Respondents urge, would render meaningless a recent amendment to section 1226 by the Laken Riley Act (LRA). The LRA added new categories of noncitizens subject to mandatory detention under section 1226(c), and one such category was for noncitizens lacking valid documentation *and* who have been charged with or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). But if Respondents' interpretation of section 1225 were correct, then there would have been no need for the LRA to create these additional categories because all noncitizens who are present in the United States and have not been admitted would have already been ineligible for bond under section 1225(b)(2)(A).

6

The Court also agrees with those courts that have found that Respondents' interpretation of section 1225(b) is "at odds with both the relevant legislative history and longstanding agency practice." *Belsai D.S.*, 2025 WL 2802947, at *7; *see, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1150 (D. Minn. 2025) (discussing the longstanding practice of treating noncitizens who resided in the United States, but who had entered without inspection, as being subject to section 1226(a)).

The fact that Freddy C. has requested asylum does not change the conclusion. The definition of "admission" in this context means "the lawful *entry* of the noncitizen into the United States after inspection and authorization by an immigration officer." *Barco Mercado*, 2025 WL 3295903 at *5 (quoting 8 U.S.C. § 1101(a)(13)(A) (emphasis altered)). Even by applying for asylum, a "noncitizen who already has entered the United States illegally and is living here cannot be said to be actively seeking lawful *entry* into the United States," because the "entry, whether lawful or unlawful, occurred years ago." *Id.* (emphasis in original). Other courts have reached this same conclusion under similar facts. *E.g.*, *Quishpe-Guaman v. Noem*, No. 4:25-CV-00211-TWP-KMB, 2025 WL 3201072, at *4 (S.D. Ind. Nov. 17, 2025) (finding it was "strong evidence" that the federal government earlier released a noncitizen on her own recognizance under section 1226 and rejecting Respondents' argument that her asylum application shows that she "is plainly seeking admission to the United States"); *Mayamu K. v. Bondi*, File No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *4, 8 (D. Minn. Oct. 20, 2025) (concluding that despite a pending asylum application, the petitioner's previous Order of Release on Recognizance under section 1226 precludes detention under section 1225).

Therefore, the Court concludes that Freddy C.'s detention is governed by section 1226(a), and he is not subject to section 1225(b).

### C.     Remaining Independent Grounds for Relief

Moreover, the Court also grants the Petition and orders release for another independent reason. Because section 1226(a) applies, a warrant was a prerequisite to Freddy C.'s detention. *See Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026); *Juan S.R. v. Bondi*, No. 26-CV-5 (PJS/LIB), Doc. No. 8 at 3–4 (D. Minn. Jan. 1, 2026). *See also* 8 U.S.C. § 1226(a) ("*On a warrant issued by the Attorney General*, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." (emphasis added)). The Petition alleges that Freddy C.'s arrest was warrantless (Pet. ¶ 25), and Respondents have not presented evidence to the contrary. Consequently, on this independent basis, the Court grants the Petition and orders Freddy C.'s immediate release.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED, as follows:

1. Respondents are ORDERED to release Petitioner Freddy C. from custody <u>immediately</u> in Minnesota without conditions, and in any event on or before <u>4:00 p.m. CT on February 17, 2026</u>. Given the winter season and low outside temperatures, Respondents are further ordered to ensure that Petitioner is wearing appropriate clothing at the time of his release.

2. On or before <u>11:00 a.m. CT on February 18, 2026</u>, counsel for Respondents shall file a letter affirming that Petitioner was released from custody in Minnesota without conditions in accordance with this Order. Counsel shall also file a declaration on or before <u>11:00 a.m. CT on February 18, 2026</u>, pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that

    states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation).

3. Freddy C. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

4. To the extent Petitioner seeks relief beyond an order requiring release or an order requiring a bond hearing, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 16, 2026
        /s/ *Jeffrey M. Bryan*
        Judge Jeffrey M. Bryan
        United States District Court